

ORDERED in the Southern District of Florida on October 29, 2007.

Steven H. Friedman, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
West Palm Beach Division

IN RE:

HARRY HALE MARSH,                         Case No. 06-15669-BKC-SHF
                                          Chapter 7 Proceeding
_____Debtor_____/


LINDA PATCHETT,                           Adv. Pro. No. 07-1067-BKC-SHF-A


                Plaintiff,
vs.

HARRY HALE MARSH,


_____Defendant._____/


## MEMORANDUM OPINION

**THIS CAUSE** came on for trial on June 25, 2007 upon the Complaint Objecting to Debtor's Discharge and to Dischargeability of Debt (C.P. 1), which complaint was filed on February 12, 2007. Counts 1 and 2 contain allegations ostensibly warranting denial of dischargeability of the indebtedness owed by defendant to plaintiff under 11 U.S.C. §§523(a)(2) and (a)(6). Counts 3, 4, and

5 contain allegations ostensibly warranting a denial of defendant's Discharge of Debtor under 11 U.S.C. §§727(a)(2), (a)(3), and (a)(4). At the commencement of trial, plaintiff announced that she would not be pursuing Counts 1 and 2, but rather, would be addressing only Counts 3, 4, and 5, seeking a denial of the debtor's discharge. The Court, having considered the testimony and documentary evidence presented, the candor and demeanor of the witnesses, the underlying pleadings, and being otherwise fully advised in the premises, finds that plaintiff has failed to meet her burden of proof as to Counts 3 and 4, but that plaintiff has met her burden of proof as to Count 5. Accordingly, a denial of the issuance of a Discharge of Debtor to defendant Harry Hale Marsh is warranted.

## JURISDICTION

The Court has jurisdiction of this matter pursuant to 28 U.S.C §§ 1334(b) and 157(b)(2)(J). This is a core proceeding pursuant to 28 U.S.C. § 157(b). The following constitutes the Court's findings of fact and conclusions of law following a trial conducted pursuant to Fed. R. Civ. P. 52, as made applicable to these proceedings by Fed. R. Bankr. P. 7052.

## FINDINGS OF FACT

Defendant Harry Hale Marsh filed his voluntary chapter 7 petition on November 3, 2006. In his bankruptcy schedules (C.P. 1), the debtor lists approximately 35 creditors, the largest of which is plaintiff, listed as being owed $776,089.04 (Plf's Tr. Ex. 1, Schedule F). This indebtedness is predicated upon a final judgment entered by the Circuit Court for the Eleventh Judicial Circuit, in and for Dade County (now, Miami-Dade County), Florida on December 2, 1980 (Pl's Tr. Ex. 55). The life of the original judgment was twenty years. §95.11 Fla. Stats. (Supp. 1980). However, prior to the expiration of the validity of the state court judgment, plaintiff filed a motion in the state trial

court to extend the life of the judgment. Ultimately, the Third District Court of Appeal for the State of Florida determined that the life of a state court judgment could be extended by the commencement of a new lawsuit on the judgment. *Marsh v. Patchett*, 788 So. 353, 354-355 (Fla. 3rd DCA 2001). Thereafter, on February 2, 2002, the Circuit Court of the Eleventh Judicial Circuit, in and for Miami-Dade County, Florida entered its Order Granting Plaintiff's Renewed Motion for Entry of Summary Final Judgment and Final Judgment (Pl's Tr. Ex. 56), thereby renewing plaintiff's judgment in the amount of $776,089.04.

The gravamen of plaintiff's contentions that a Discharge of Debtor should not be issued in favor of defendant is that defendant allegedly has concealed a secret proprietary interest in BHS Optical, Inc. ("BHS"), an optical business. According to the testimony of Scott Penn, who was employed by BHS for approximately one year, BHS previously operated from premises located at 7531 North Federal Highway in Boca Raton, Florida. Thereafter, BHS relocated to 6099 North Federal Highway, Boca Raton, Florida. During at least a portion of its existence, BHS has utilized the fictitious name "Eye Doc". BHS presently operates an optical shop at 3011 Yamato Road, Boca Raton, Florida, doing business as "Eye Doc of Boca".

BHS was incorporated on February 12, 2004. Barry A. Ginsberg, a board-certified optometric physician, is reflected in the Minutes of the First Meeting of the Stockholder of BHS as its sole shareholder and director (Pl's Tr. Ex. 40).

**OBJECTION TO DISCHARGE - CONCEALMENT OF PROPRIETARY INTEREST**

Plaintiff alleges in Count 3 of her complaint that defendant, with intent to hinder, delay, or defraud a creditor, has concealed property of the bankruptcy estate within one year of the November 3, 2006 petition date; to-wit, his secret interest in BHS, or the optical business which BHS operates.

3

Plaintiff's proof with regard to the alleged secret interest is predicated upon innuendo and upon defendant's association with Dr. Ginsberg. Defendant allegedly previously owned a one-third interest in GHM Optical, Inc. ("GHM"), which operated an optical shop with co-owners Gloria Papajohn and Mary Jo Petrey between 1991 and 1993. Defendant also allegedly previously owned an interest in P.J. Optical, Inc. ("P.J. Optical"), which did business as Apple Eye Care in Boca Raton, Florida between 1987 and 1998.

Testimony also was presented during trial that defendant allegedly invested in another venture, G.P. Optical, Inc. ("G.P. Optical"), which did business under the trade name "Eye Doc", commencing in 1999. Defendant supposedly owned an interest in G.P. Optical with Dr. Ginsberg and Gloria Papajohn. In addition, plaintiff asserts defendant also owned interests in other previously-existing business entities with Gloria Papajohn, and/or Mary Jo Petrey, and/or Harold Peterson. However, further discussion of the afore-referenced, previously-existing business entities is superfluous, in that Count III of the instant cause of action addresses **solely** defendant's alleged secret interest in BHS. A party objecting to a debtor's discharge must satisfy the relevant provisions of §727 by a preponderance of the evidence. *Stone v. Bosse*, 200 B.R. 419, 421 (Bankr. S.D.Fla. 1996); *Furr v. Lordy*, 214 B.R. 650, 664 (Bankr. S.D.Fla. 1997); *In re Craig*, 252 B.R. 822 (Bankr. S.D.Fla. 2000). Although defendant may have received various payments from BHS, and although BHS also may have made various third party payments for defendant's benefit, the record herein does not substantiate that defendant owns or owned a secret interest in BHS. It is apparent that defendant enjoys a close friendship with Dr. Ginsberg, was and is employed by BHS, and is extended various courtesies by Dr. Ginsberg, including the use of one of Dr. Ginsberg's automobiles, and

including the regular purchase of meals by Dr. Ginsberg for defendant. However, the record at trial does not establish that defendant surreptitiously owns or owned a proprietary interest in BHS.

### OBJECTION TO DISCHARGE - CONCEALMENT OR FALSIFICATION OF BUSINESS TRANSACTIONS

Plaintiff alleges in Count 4 of her complaint that defendant has concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information with respect to defendant's interest in BHS. Pursuant to 11 U.S.C. §727(a)(3), a debtor will be precluded from receiving a Discharge of Debtor when a debtor:

> has concealed, destroyed, mutilated, falsified, or failed to keep or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case....

As with objections to discharge under 11 U.S.C. §727(a)(2), the burden of proof rests with the plaintiff to establish, by a preponderance of the evidence, that a debtor has failed to properly maintain his or her books and records. *In re Craig, id.* Although plaintiff presented competent evidence as to defendant's failure to properly maintain records with regard to **other property interests**, she failed to present such evidence with regard to any proprietary interest held by defendant in **BHS Optical**. For example, in response to Question 10 in his Statement of Financial Affairs (C.P. 1) relating to transfers of property by the debtor outside of the ordinary course of business within two years immediately preceding the commencement of the debtor's bankruptcy case, defendant indicated that there were no such transfers. Yet, during plaintiff's direct examination of defendant, plaintiff impeached defendant (as an adverse witness) regarding his denial of ownership of an equity interest in C.M.2.C. Corporation. More specifically, the defendant

5

acknowledged that he transferred his equity interest, which he characterized as being a 100% interest, to Dr. Ginsberg shortly after Hurricane Wilma caused substantial damage in South Florida on or about October 15, 2005. In that defendant filed his chapter 7 petition on November 3, 2006, his transfer clearly falls within the two-year period referenced in Question 10 of the Statement of Financial Affairs. Thus, defendant's transfer of his C.M.2.C. equity interest should have been listed. Plaintiff instead chose to take issue with the propriety of the issuance of a Discharge of Debtor based upon defendant's alleged concealment of a proprietary interest in BHS. Although the evidence establishes that defendant received the benefit of numerous payments made by BHS, such payments do not prove the existence of an ownership interest held by defendant in BHS.

### OBJECTION TO DISCHARGE - FALSE OATH OR ACCOUNT

Plaintiff also contends, by way of Count 5 of her complaint, that the defendant knowingly and fraudulently, in connection with this case, made a false oath, based upon numerous alleged omissions. This Court need not address each of the specifically delineated omissions asserted by plaintiff. The debtor's gross misstatement, with regard to his response to Question 1 of his Statement of Financial Affairs in listing his 2006 income, **alone** compels this Court to deny the issuance of a Discharge of Debtor. Defendant presently is employed, at least on a part-time basis, by Dr. Barry Ginsberg as an optician (Pl's Ex. 1 - Schedule I), and generally has been engaged in the optical business for many years. Dr. Ginsberg and the debtor apparently have engendered a close personal and business relationship. Based upon defendant's Schedule I contained within his Bankruptcy Schedules (Pl.'s Tr. Ex. 1), the debtor earns gross monthly income of $800.00. Defendant's Statement of Financial Affairs reflects that for the year 2006, he earned only $3,500 in wages, and from "Support from Dr. Ginsberg, Family and Friends". The trial record presents a starkly different scenario.

For the calendar year 2006 (through the November 3 petition date), Mr. Marsh actually earned at least an additional $27,624.73 (not including his weekly salary from BHS). This sum represents the aggregate of the payments made by BHS on behalf of, and/or for the benefit of, the defendant during 2006, extracted from BHS's 2006 check stubs (Pl.'s Tr. Ex. 58). The $27,624.73 encompasses rental paid on defendant's residence ($14,020.00); American Express charges ($7,154.87); Florida Power & Light Company utility service for defendant's residence ($2,783.59); life insurance premiums paid to Prudential Financial ($1,638.59); attorneys' fees, including the fee paid to his bankruptcy counsel ($1,550.00); Allstate Insurance Company ($88.64); Adelphia Cable ($133.78); and a doctor's bill paid to a Dr. Gonsky ($255.00). Exclusions from income must be narrowly construed. *Commissioner v. Schleier*, 515 U.S. 323, 115 S.Ct. 2159, 132 L.Ed.2d 294 (1955). "[I]f the payment proceeds primarily from the constraining force of any moral or legal duty, or from the incentive of anticipated benefit of an economic nature, it is not a gift." *Commissioner v. Duberstein*, 363 U.S. 278,285, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960). In light of the defendant's employment by BHS, which is solely owned by Dr. Ginsberg, and considering the varying nature of the numerous payments made by BHS on behalf of defendant, the Court determines that the afore-referenced $27,624.73 constitutes income to defendant, which should have been included in the defendant's response to Question 1 of defendant's Statement of Financial Affairs. Considering the magnitude of the "oversight", the Court concludes that defendant's omission was made knowingly and fraudulently to mislead his creditors and his bankruptcy trustee.

Pursuant to Bankruptcy Rule 7054(a), the Court shall enter Judgment denying the issuance of a Discharge of Debtor to Harry Hale Marsh.

###

**The Clerk of Court is directed to serve a copy of this Order on all interested parties.**